[ECF No. 25]

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **JAI WOOD, JR.,** | |
| **Plaintiff,** | **Civil No. 21-20738 (RMB)(EAP)** |
| **v.** | |
| **BOROUGH OF WOODLYNNE, et al.,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter comes before the Court on Defendant Ryan Dubiel's motion to quash and for the entry of a protective order. ECF No. 25. Plaintiff Jai Wood, Jr. has filed opposition to the motion. ECF No. 27. Defendant Ryan Dubiel has filed a reply brief. ECF No. 29. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Defendant Ryan Dubiel's motion to quash is **GRANTED IN PART** and **DENIED IN PART**, and Defendant's motion for the entry of a protective order is **DENIED**.

## FACTS

This is a 42 U.S.C. § 1983 civil rights case arising out of the December 29, 2019 shooting of Plaintiff Jai Wood, Jr. ("Plaintiff") by Defendant Ryan Dubiel ("Defendant"), a former police officer of the Borough of Woodlynne, New Jersey (the "Borough"). Plaintiff's Complaint ("Compl."), ECF No. 1, ¶¶ 1, 7, 12. At the time of the shooting, Defendant was thirty years old and had worked for eight other police departments before the Borough hired him. *Id*. ¶ 18 and Ex. A (New York Times article). Plaintiff alleges that "Officer Dubiel had a troubling history as a

police officer, which ranged from racist posts on his [F]acebook account to numerous excessive force complaints." *Id*. ¶ 17.  For example, during a two-year period of employment with the Camden Police Department, Defendant allegedly used force on sixteen occasions, thirteen of which resulted in injury to the arrestee.  *Id*. ¶¶ 19-20 and Ex. A.  In addition, Plaintiff alleges that Defendant had been previously fired from the Far Hills Police Department after just three months of employment.  *Id*. ¶ 22 and Ex. A.  Plaintiff has attached a June 24, 2020 New York Times article to his Complaint that allegedly details Defendant's pattern of disciplinary infractions.  *Id*., Ex. A.

On December 29, 2019, Defendant and other officers from the Borough responded to a report of an armed robbery at a gas station.  *Id*. ¶ 9.  The officers spotted Plaintiff, who they identified as the perpetrator, and pursued Plaintiff on foot.  *Id*. ¶¶ 10-11.  Defendant contends that the officers believed Plaintiff was armed during the pursuit.  Defendant's Reply Brief ("Def. Rep."), ECF No. 29 at 1.  Defendant asserts that the officers told Plaintiff to stop running, Def. Rep. at 1, but Plaintiff alleges that Defendant did not warn Plaintiff that he would shoot before discharging his firearm, Plaintiff's Opposition Brief ("Pl. Br."), ECF No. 27 at 1.  Defendant allegedly fired one shot at Plaintiff, hitting Plaintiff in the back and buttocks area.  Compl. ¶ 12. Plaintiff was then arrested, and no gun or other weapon was found on Plaintiff's person.  *Id*. ¶ 16.

Plaintiff later pled guilty to one count of first-degree armed robbery and is currently incarcerated.  Defendant's Brief in Support of Motion ("Def. Br."), ECF No. 25 at 1; Compl. ¶ 3. The Borough allegedly fired Defendant after an unrelated use of force incident in June 2020, for which Defendant pled guilty to two counts of simple assault.  Compl. ¶¶ 27, 28 and Ex. B.

## PROCEDURAL HISTORY

Plaintiff filed a Complaint on December 28, 2021, asserting a Fourth Amendment excessive force claim against Defendant (Count I); a bystander liability claim against two other officers (Count II); and a *Monell* claim against the Borough and its Public Safety Director (Count

III) for their failure to adequately evaluate Defendant's background before hiring him as a police officer.  Compl. ¶¶ 38-43, 45-50, 52-59.  Regarding his *Monell* claim, Plaintiff alleges that the Borough knew or should have known of Defendant's "troubled" employment history but "failed to adequately check and evaluate" his background and "deliberately ignored" his unfitness to serve as a police officer.  *Id*. ¶¶ 53, 56-57.  Plaintiff alleges that available information "would have led a reasonable policymaker to conclude that hiring Dubiel would pose a substantial risk that he would violate citizens['] constitutional rights by using excessive force."  *Id*. ¶ 57.  On August 15, 2022, the Court entered a stipulated Discovery Confidentiality Order.  *See* ECF No. 19.  Factual discovery is ongoing, and no dispositive motions have yet been filed.  *See generally* Dkt. sheet; Amended Scheduling Order, ECF No. 39, ¶¶ 2, 7.

On September 28, 2022, Plaintiff served subpoenas on seven governmental entities that had previously employed Defendant as a police officer.  Def. Br. at 1; Certification of Eric J. Riso ("Riso Certif."), ECF No. 25-2, ¶ 1 and Ex. A.[1]  Each subpoena sought "Officer Dubiel's employment records, disciplinary records, Internal Affairs records and any and all police reports, information and documents related to Officer Dubiel's use of force while in your employ."  *Id*. Counsel for Defendant Ryan Dubiel informed Plaintiff's counsel of Defendant's objection to the subpoenas, and counsel for Defendant requested that the former employers desist from producing any records due to concerns about the confidential nature of the materials.  Letter from Eric J. Riso, Esquire, ECF No. 20 at 1.[2]  The parties raised the dispute involving the subpoenas with the

_____

[1]  These seven entities are the Union City Police Department, Galloway Police Department, Far Hills Police Department, Little Falls Police Department, Seaside Heights Police Department, Edgewater Park Police Department, and the Camden County Police Department.  Riso Certif. ¶ 1 and Ex. A.

[2]  Plaintiff notes that, "Significantly, none of the non-parties served the Subpoenas have moved to quash them or have sought a protective order."  Pl. Br. at 4.  However, the non-party police departments may have refrained from moving to quash the subpoenas upon Defendant's demand to not produce the records.  *See* Letter from Eric J. Riso, Esquire, ECF No. 20 at 1.  The

Court on November 3, 2022, during a telephone status conference. Def. Br. at 1. On November 4, 2022, the Court entered a discovery dispute order requiring counsel to meet and confer regarding the scope of discovery of Defendant's Internal Affairs ("IA") and personnel files from his prior employers. Order, ECF No. 23, ¶ 4. Also, the Court granted Defendant leave to file a motion to quash the subpoenas if the parties were unable to resolve the dispute. *Id*.

On November 9, 2022, Plaintiff served interrogatories on the Borough which included questions about Defendant's hiring. Def. Br. at 2; Riso Certif. ¶ 2 and Ex. B, ¶¶ 6, 8-10. Plaintiff's interrogatories asked, among other things, whether Defendant underwent any testing before his hiring, whether any prior employers were contacted, the substance of those communications, whether any documents were obtained from prior employers, and the contents of those documents. Riso Certif. ¶ 2 and Ex. B, ¶¶ 6, 8-10. On November 10, 2022, Defendant's counsel sent Plaintiff's counsel a letter objecting to the interrogatories on the basis that the interrogatories sought the same confidential employment records requested in the subpoenas sent to Defendant's prior employers. Def. Br. at 3; Riso Certif. ¶ 3 and Ex. C. Plaintiff did not reply to this letter. Def. Br. at 3; Riso Certif. ¶ 4.

On November 21, 2022, Defendant filed a motion to quash the subpoenas and for the entry of a protective order precluding Plaintiff from seeking information from the Borough, or any other source, regarding Officer Dubiel's prior employment. *See* ECF No. 25; Def. Br. at 3.[3] Plaintiff filed an opposition brief on December 1, 2022. *See* Pl. Br., ECF No. 27. Defendant filed a reply brief on December 12, 2022, which additionally requested the Court to conduct an *in camera*

_____

non-party police departments have not stated any position on the subpoenas.

 [3] Neither the Borough nor the other Defendants took a position on the motion. *See* Letter from J. Brooks DiDonato, Esquire, ECF No. 26 at 1. However, the other Defendants filed two letters stating their intention to file a motion to bifurcate Plaintiff's excessive force claims from his *Monell* claim. ECF Nos. 26, 28. That motion to bifurcate was filed on December 16, 2022, *see* ECF No. 30, and will be decided separately.

review of the files or order a redaction of personal identifiers if the Court considered them

potentially discoverable. *See* Def. Rep. at 11-12, ECF No. 29.

## ANALYSIS

### I.    Standards of Review

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and provides that,

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

claim or defense and is proportional to the needs of the case . . . . Information within this scope of

discovery need not be admissible in evidence to be discoverable."  "Courts have construed Rule

26(b)(1) liberally, creating a broad vista for discovery which would encompass any matter that

bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may

be in the case." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990).

Moreover, relevance is more loosely construed at the discovery stage than at trial. *Id*.  "Although

the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited

and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

Federal Rule of Civil Procedure 45 governs the issuance, service, and enforcement of

subpoenas.  As an initial matter, "[d]iscovery sought via a subpoena issued pursuant to Rule 45

must fall within the scope of discovery permissible under Rule 26(b)." *Buckhead Meat Co. v.

AEBB of Greenwich Corp.*, No. 19-16766, 2022 WL 16708988, at *2 (D.N.J. Feb. 10, 2022).  If

the information falls within the scope of permissible discovery, then a party may serve a subpoena

on a third party to obtain documents, testimony, and/or other information.  *See* Fed. R. Civ. P.

45(c).  Rule 45, however, is not without limits.  Rule 45(d) sets forth the circumstances under

which a court may limit or prohibit discovery.  Relevant here, Rule 45(d)(3)(A) provides that a

court must quash or modify a subpoena when it "requires disclosure of privileged or other

protected matter, if no exception or waiver applies."  The moving party bears the burden of

demonstrating that a subpoena must be quashed.  *In re Lazaridis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011); *see Malibu Media, LLC v. Doe*, No. 15-1821, 2015 WL 7776895, at *1 (D.N.J. Dec. 2, 2015).  "This has been described as a heavy burden."  *Malibu Media, LLC*, 2015 WL 7776895, at *1 (quotation omitted).

Federal Rule of Civil Procedure 26(c) govern protective orders.  Rule 26(c)(1) states that, "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . .  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."  Protective orders are "intended to offer litigants a measure of privacy" and require "balancing between public and private concerns."  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).  "The party seeking a protective order over discovery material must demonstrate that 'good cause' exists for the order."  *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (quotation omitted).  "Good cause means 'that disclosure will work a clearly defined and serious injury to the party seeking closure.  The injury must be shown with specificity.'"  *Id.* (quoting *Pansy*, 23 F.3d at 786).  "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing."  *Pansy*, 23 F.3d at 786 (quoting *Cipollone v. Liggett Grp.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

## II.  Discussion

### A.  *Motion to Quash*

#### 1.  Relevance

First, the parties dispute the relevance of Defendant's Internal Affairs ("IA") and personnel files that Plaintiff has issued and served on the non-party police departments that previously employed Defendant.  Defendant argues that the subpoenas should be quashed because the "information from Officer Dubiel's prior employers is neither relevant nor reasonabl[y] calculated

6

to lead to discovery of admissible evidence . . . ."  Def. Br. at 7.  Although Defendant concedes that IA and personnel files maintained by Defendant's then-current employer are discoverable, Defendant argues that the files "maintained by Defendant's **PRIOR** employers have no bearing on Plaintiff's excessive force claim against Officer Dubiel, nor his *Monell* claim for that matter." Def. Rep. at 6 (emphasis in original).  Defendant argues that his prior IA and personnel files have no connection to any unlawful custom or policy of the Borough, and therefore are irrelevant to Plaintiff's *Monell* claim.  Def. Rep. at 9-10.  Instead, Defendant characterizes the subpoenas as a mere "fishing expedition."  Def. Br. at 7-8.

Plaintiff concedes that Defendant's prior IA and personnel records are not "directly relevant" to the excessive force claim against Defendant, but Plaintiff argues that these records are "highly relevant to Plaintiff's *Monell* claim based on a failure to adequately screen Dubiel before hiring him."  Pl. Br. at 4.  Plaintiff argues that he has adequately pled a failure to screen *Monell* claim against the Borough, and that under the relevant legal standard, this type of claim necessarily implicates the background of the applicant.  Pl. Br. at 4-5.  Accordingly, Plaintiff argues that Defendant's prior IA and personnel files are relevant to the issue of whether the Borough failed to consider Defendant's history of using excessive force before hiring him.  Pl. Br. at 5.

In *Monell v. Department of Social Services of the City of New York*, the Supreme Court recognized that municipalities may be directly liable under 42 U.S.C. § 1983 for constitutional violations that implement or execute a governmental policy or custom.  436 U.S. 658, 690 (1978).  A *Monell* claim may be based upon the failure to adequately screen a prospective applicant's record if "a municipal actor disregarded a known or obvious consequence of his action."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997).  This inquiry "depends upon the background of the applicant."  *Id*.  Therefore, the Court finds that past employment records that implicate an applicant's fitness for duty may be relevant to a *Monell* failure to screen

7

claim.

For example, in *Griffin v. City of Opa-Locka*, a municipality hired an employee without a background check or any discussion of his qualifications, despite notice of "a list of prior sexual harassment charges" against the employee.  261 F.3d 1295, 1313-14 (11th Cir. 2001).  The court affirmed a judgment against the city on a *Monell* failure to screen claim because "a cursory check into [the employee's] prior employment history would have further alerted the City to prior complaints about [the employee] with regard to sexual harassment."  *Id*. at 1314.  Moreover, the city did not contact prior employers to obtain the employee's employment files.  *Id*.  In *Griffin*, the employee's prior employment records were relevant to the issue of whether the city was deliberately indifferent to the risks of hiring him.  *Id*.  Therefore, it is apparent that employment records from prior employers, not only the most recent employer, may be relevant to a *Monell* claim against a municipality.

Also, in *Kirksey v. Ross*, after a police officer allegedly committed multiple sexual assaults, the alleged victims brought a *Monell* failure to screen claim against the city.  372 F. Supp. 3d 256, 258-60 (E.D. Pa. 2019).  The court denied the city's motion to dismiss this claim because the plaintiffs had adequately alleged that the city and its decisionmakers knew about the officer's previous employment, the allegations of sexual assault previously levelled against him, and that the officer was separated from his previous positions.  *Id*. at 265.  Similarly, here, Plaintiff has alleged that the Borough knew or should have known about Defendant's previous employment in law enforcement; that Defendant has a history of disciplinary actions against him for using excessive force; and that Defendant was previously separated from a litany of police departments because of his lack of fitness for duty.  Compl. ¶¶ 53-56.  As a result, the Court finds that discovery supporting these essential allegations would be relevant to asserting Plaintiff's *Monell* claim. Defendant's IA and personnel files from his prior employers will likely detail any past misconduct

allegations against him; the reasons for his separation from the other police departments; and what the Borough may have known before hiring him.  As such, the Court concludes that Defendant's prior employment records are relevant and discoverable.

Defendant, however, argues that Plaintiff's allegations are insufficient to support the subpoenas because the allegations are "based on nothing more than speculation."  Def. Rep. at 5. Defendant argues that, "Presumably, the only way that Plaintiff is aware [of] Officer Dubiel's employment history is because of the newspaper article" attached to Plaintiff's Complaint, and "the information contained in that article is hearsay at best and does not serve as competent evidence upon which Plaintiff can rely . . . ."  Def. Rep. at 5 n.3; *see* Compl., Ex. A.  While courts have denied access to police personnel files "absent some articulable reason beyond mere speculation[,]" *see United States v. Perla*, No. 20-281, 2022 WL 1270944, at *2 (W.D. Pa. Apr. 28, 2022) (quotation omitted), there is no requirement that a plaintiff support an articulable reason for a subpoena with evidence admissible at trial.  "Whether certain documents are relevant is 'viewed in light of the allegations of the complaint, not as to evidentiary admissibility.'"  *Preston v. Malcolm*, No. 09-3714, 2009 WL 4796797, at *5 (D.N.J. Dec. 8, 2009) (quoting *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987)).  Therefore, whether the New York Times article attached to the Complaint is hearsay has no bearing on the subpoenas.

Moreover, it is apparent that Plaintiff's *Monell* claim is based on more than "mere speculation."  Plaintiff has alleged that Defendant cycled through nine police departments in a matter of years, including being "forced out" of the Camden County Police Department and fired by the Far Hills Police Department after just three months.  Compl. ¶¶ 18-19, 22.  In addition, Plaintiff contends that "no chief of police gave Dubiel a recommendation of employment[,]" and Plaintiff makes specific allegations regarding Defendant's pattern of excessive force.   Compl. ¶¶ 19-23.  Here at the discovery phase of litigation, Plaintiff is not yet required to prove these

allegations with admissible evidence.  For the purpose of serving subpoenas on Defendant's prior employers, these allegations sufficiently provide an articulable reason to obtain Defendant's IA and personnel files.

Defendant also argues that, even if Plaintiff has stated a *Monell* claim against the Borough, "the Monell claim will necessarily be negated in the event it is determined that Officer Dubiel did not use excessive force."  Def. Br. at 7.  Plaintiff does not dispute that his *Monell* claim against the Borough will fail if the excessive force claim against Defendant is dismissed.  Pl. Br. at 4; *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (explaining that *Monell* does not allow for a claim against a municipality if a plaintiff does not suffer a constitutional injury from an individual officer).  However, as Plaintiff aptly states, Defendant's argument amounts to "[p]utting the cart before the horse."  Pl. Br. at 3.  Plaintiff's excessive force and *Monell* claims both remain live, and Defendant has not filed, much less prevailed on, a dispositive motion.  The fact that Plaintiff's excessive force claim could hypothetically fail at a later stage of litigation provides no reason to block discovery related to his *Monell* claim today.

Defendant's final relevance argument is that the subpoenas must be quashed because a municipality is not automatically liable under *Monell* for hiring an officer without performing an adequate background check.  Def. Rep. at 7.  It is true that a municipality is not vicariously liable under *Monell* for every constitutional injury inflicted by a municipal employee.  *Brown*, 520 U.S. at 410.  The *Brown* court explained:

> [A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury.  Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff.  The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

*Id*. at 412 (emphasis in original).  Contrary to Defendant's arguments, these standards do not provide a reason to bar discovery, although they do warrant limiting the scope of Plaintiff's

10

subpoenas.

In *Reid v. Cumberland County*, an inmate sued correctional officers, a county, and the county's department of corrections under 42 U.S.C. § 1983 after an alleged use of excessive force. 34 F. Supp. 3d 396, 40 (D.N.J. 2013).  The defendants disputed the relevance of the officers' personnel files and IA files detailing prior incidents of excessive force to the plaintiff's *Monell* claim. *Id*. at 403.  Although the court found the officers' "personnel files and IA files to be relevant discovery[,]" the court concluded that "not all IA files, complaints, or disciplinary reports of the Officer Defendants may be discoverable; rather, the scope of such discovery is determined by comparing allegations contained in Plaintiff's complaint against the nature of the action addressed by the IA files, the cause for any prior complaints against the Officer Defendants, and the cause for the discipline in any disciplinary report." *Id*. at 403-04.  While documents relating to excessive force, use of force, and permitting the use of force by others would be relevant, documents covering other infractions such as "discipline for absences or tardiness may not fall under the broad scope of discovery." *Id*. at 404.

Similarly, here, the allegations contained in Plaintiff's Complaint must be compared against the discovery sought, because only documents linked to the specific type of alleged constitutional violation are relevant to Plaintiff's *Monell* failure to screen claim.  Plaintiff clearly states in his Complaint that his individual claim against Defendant is a Fourth Amendment excessive force claim.  Compl. ¶¶ 37-43.  Therefore, the Borough may only be liable on a *Monell* claim if it disregarded the fact that Defendant was highly likely to use excessive force, notwithstanding any other constitutional violations or misconduct.  *See Brown*, 520 U.S. at 412. As a result, only Defendant's prior employment files relating to Defendant's use of force or excessive force are relevant to Plaintiff's *Monell* claim and thus, discoverable.   The Order

11

following this Opinion will so restrict the scope of Plaintiff's subpoenas.[4]

## 2.   Confidentiality

Second, Defendant argues that Plaintiff's subpoenas must be quashed because his personnel and IA files retained by previous employers are confidential and may not be discovered. Def. Br. at 6.  Importantly, Defendant does not assert that the personnel and IA files are protected by any privilege.  Def. Rep. at 4-5.[5]  Instead, Defendant notes that Federal Rule of Civil Procedure 45(d)(3)(A)(iii) requires the Court to quash or modify a subpoena that seeks disclosure of not only privileged material, but also "other protected matter." *Id*. at 2.  Defendant argues that his IA files held by prior employers qualify as other protected matter because they are considered "confidential information" under the New Jersey Attorney General's Internal Affairs Policy and Procedures Manual (the "AG's Manual").  Def. Br. at 5-6; Riso Certif., Ex. D at 56, ¶ 9.6.1.  In addition, Defendant argues that courts have recognized both IA and personnel files to be confidential materials.  *Id*. at 5-6.

In opposition, Plaintiff argues that the confidential treatment of Defendant's IA files under the AG's Manual does not provide a basis to shield the files from discovery.  Pl. Br. at 7.  Also,

---

[4]  The Court recognizes that Plaintiff may have intended only to seek employment records related to Defendant's use of force.  The subpoenas request "Officer Dubiel's employment records, disciplinary records, Internal Affairs records and any and all police reports, information and documents related to Officer Dubiel's use of force while in your employ."  Riso Certif., Ex. A. However, it is ambiguous whether the phrase "related to Officer Dubiel's use of force while in your employ" only limits police reports, information, and other documents, or whether it limits production of all types of employment records.  Therefore, the Order following this Opinion clarifies that Plaintiff may only seek employment records, regardless of type, with a connection to Defendant's prior uses of force.

[5]  A footnote in Defendant's motion brief implies that his arguments are based upon an unspecified claim of privilege. *See, e.g.,* Def. Br. at 5 n.2.  In turn, Plaintiff argues in his opposition brief, "out of an abundance of caution," that the executive or law enforcement privilege does not apply to Defendant's personnel and IA files.  Pl. Br. at 9.  However, the Court need not address privilege issues because Defendant explicitly states in his reply brief that his motion to quash "is not based upon a privilege argument" and that "[t]he Court need not concern itself with Plaintiff's privilege argument."  Def. Rep. at 4.

Plaintiff notes that the AG's Manual does not treat an officer's personnel files as confidential, and Plaintiff argues that "a police officer's personnel files, including the disciplinary and use of force reports, are not protected by confidentiality and may be discovered in a federal civil rights case." *Id.* at 11.  Moreover, Plaintiff cites to civil rights cases in this district where courts have ordered the production of defendant police officers' personnel and IA and personnel files.  *Id.* at 11-12.

First, the Court recognizes that both Defendant's IA and personnel files are confidential. As Defendant notes, the AG's Manual clearly states that, "The nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials are confidential information.  The contents of an internal investigation case file . . . shall be retained in the internal affairs function and clearly marked as confidential."  Riso Certif., Ex. D at 56, ¶ 9.6.1.  In addition, state and federal courts have frequently acknowledged the confidentiality of New Jersey police officers' IA files.  *See, e.g.*, *Rivera v. Union Cnty. Prosecutor's Off.*, 250 N.J. 124, 142-43 (2022) (recognizing the New Jersey Attorney General's authority to adopt rules and regulations that guarantee the confidentiality of internal affairs investigations and all supporting materials); *Foley v. Boag*, No. 05-3727, 2006 WL 6830911, at *2 (D.N.J. May 31, 2006) (stating that "the default position governing access to internal affairs records is confidentiality" to ensure the integrity of information prepared for internal use).  Also, courts have regularly considered personnel files to be confidential.  *See, e.g.*, *Abreu v. New Jersey*, No. 14-716, 2015 WL 9480021, at *7 (D.N.J. Dec. 29, 2015); *Miles v. Boeing Co.*, 154 F.R.D. 112, 115 (E.D. Pa. 1994) ("[P]ersonnel files are confidential and discovery should be limited.").[6]

---

[6] "Generally, a motion to quash or modify a subpoena must be brought by the individual to whom it was directed."  *Malibu Media*, 2015 WL 7776895, at *2.  "However, a party to an action has standing to quash or modify a non-party subpoena where the party seeking to quash or modify the subpoena claims a privilege or privacy interest in the subpoenaed information."  *Id.* Here, Plaintiff has served his subpoenas on non-party police departments and not on Defendant, who has brought this motion to quash.  Def. Br. at 1.  Still, the Court finds that Defendant has

However, the confidentiality of IA and personnel files does not inherently exclude these records from discovery. *See, e.g.*, *Abreu*, 2015 WL 9480021, at *7 (explaining that although personnel files are confidential, "[t]his is not to say personnel files are categorically out-of-bounds.") (quoting *Reagan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008)). In fact, the AG's Manual explicitly permits information and records of an internal investigation to be released or shared upon a court order. Def. Br. at 5-6; Riso Certif., Ex. D at 56, ¶ 9.6.1(d). For example, in *Dawson v. Ocean Township*, a § 1983 action against individual police officers and a municipality, the plaintiff moved to compel production of the officers' IA and personnel files. No. 09-6274, 2011 WL 890692, at *2 (D.N.J. Mar. 14, 2011). First, noting that "there is no legal authority that bars a plaintiff from discovering relevant information in a defendant's personnel file[,]" the court directed the production of any relevant, non-privileged documents in the officers' personnel files. *Id*. at *21-22 (quoting *V.A. ex rel. M.A. v. New Jersey Nat'l Guard Challenge Youth Program*, No. 06-347, 2007 WL 980453, at *3 (D.N.J. Mar. 29, 2007)). Next, although the court acknowledged the confidentiality of the individual defendants' IA files, the court concluded that the "confidentiality, disclosure, and dissemination of any materials produced" would be adequately protected by the entry of a Discovery Confidentiality Order. *Id*. at *22. Accordingly, the court directed the parties to submit a Discovery Confidentiality Order and ordered the defendants to subsequently produce the IA files. *Id*.

Other courts in this District have taken a similar approach. In *Foley v. Boag*, the court denied a municipal defendant's motion for a protective order limiting the scope of production of police officers' IA records. 2006 WL 6830911, at *3. While the court ordered the municipality

---

standing to quash or modify the non-party subpoenas because he has a privacy interest in the requested records. *See, e.g.*, *McKenna v. City of Philadelphia*, No. 98-5835, 2000 WL 1521604, at *2 (E.D. Pa. Sept. 29, 2000) (noting that defendants have "privacy and safety interests" in the confidentiality of personnel, disciplinary, and investigation records).

to produce all records sought by the plaintiff, the court entered a slim confidentiality order barring "dissemination to those not associated with this case and use beyond this litigation." *Id*. The court reasoned that this "limited" order "still grants Plaintiff access to and use of the requested records and is the least restrictive means to maintain confidentiality while not inhibiting Plaintiff's cause of action." *Id*.

Similarly, in *Reid v. Cumberland County*, the court granted the plaintiff's application to compel discovery of the correctional officer defendants' personnel and IA files. 34 F. Supp. 3d at 411. One defendant opposed production by arguing that "even disclosing the personnel files subject to a carefully crafted protective order" would create a risk of harm to governmental or privacy interests. *Id*. at 408. However, the court noted that disclosure of the files was contemplated by the correctional department's confidentiality policies, and that potential harm from the disclosure of sensitive investigation material "would be negated by the confidentiality order" previously entered by the court. *Id*. at 408-09; *see also Preston v. Malcolm*, No. 09-3714, 2009 WL 4796797, at *8 (D.N.J. Dec. 8, 2009) (denying a motion to quash a plaintiff's subpoena seeking confidential internal investigation materials and use of force reports because a previously entered stipulated protective order would protect personal information contained in the files).

The Court adopts the reasoning of these cases. Here, the Court entered a stipulated Discovery Confidentiality Order on August 15, 2022. *See* ECF No. 19. This Order already permits any party to this litigation to designate as confidential any information, document, or thing "that contains private or confidential personal information, including but not limited to the personnel, training, and internal affairs files of Defendant, Officer Ryan Dubiel." *Id*. ¶ 1. The Order also restricts the use of confidential material "solely for purposes of the prosecution or defense of this action" and prohibits disclosure to anyone other than a specified list of persons. *Id*. ¶¶ 3, 4. The Court finds that these provisions, together with the remainder of the Discovery Confidentiality

Order, are similar to or stronger than the provisions described in the previously cited cases and adequately protect Defendant's privacy interest in his IA and personnel files held by his previous employers.  Therefore, because the confidential nature of the records, by itself, does not warrant shielding Defendant's personnel and IA files from discovery, and because Defendant does not raise any claim of privilege or other considerations that demonstrate the records to be protected matter, the Court will deny Defendant's motion to quash Plaintiff's subpoenas.

### B.    *Motion for Protective Order*

Defendant also moves for the entry of a protective order precluding Plaintiff from obtaining information regarding Officer Dubiel's prior employment from the Borough or any other source. Def. Br. at 8-10.  Defendant argues that a protective order is necessary because Plaintiff's interrogatories to the Borough are another "improper attempt" to discover the contents of his prior employers' IA and personnel files.  Def. Rep. at 10.  Accordingly, Defendant argues that the entry of a protective order is appropriate for the same reasons set forth in his motion to quash.  Def. Br. at 9.  Further, Defendant argues that his IA and personnel files "are not being sought for any legitimate purpose[,]" but rather to "distract anyone viewing this case . . . from the underlying facts giving rise to the shooting itself."  *Id*.  Plaintiff responds that Defendant's motion for a protective order should be denied because the information sought in the interrogatories to the Borough is "highly relevant" to Plaintiff's *Monell* claim, and Defendant has stated no valid reason to preclude discovery of the information.  Pl. Br. at 12-13.

As an initial matter, it is apparent that Plaintiff's interrogatories served on the Borough are another attempt to obtain Defendant's prior IA and personnel files.  For instance, question nine asks whether anyone with the Borough saw or read the personnel files "from any Police Department regarding the qualifications of Officer Ryan Dubiel."  Riso Certif., Ex. B, ¶ 9.  In addition, this section asks the Borough to "provide a copy of all that was received."  *Id*.  Question

16

ten of the interrogatories asks the Borough to attach a copy of any documents received "from any prior employer of Officer Dubiel regarding his prior employment and/or his qualifications." *Id*. ¶ 10. This broad question presumably encompasses Defendant's IA files, among other records.

However, as previously discussed, Defendant's prior employment records are relevant to Plaintiff's *Monell* claim because a municipality's failure to screen an applicant is highly dependent on the applicant's background. *See supra* Section II(A)(1). Also, Defendant's prior IA and personnel files are not exempt from discovery simply because they are confidential. *See supra* Section II(A)(2). The stipulated Discovery Confidentiality Order equally protects the privacy of Defendant's employment records regardless of whether Plaintiff obtained them through the Borough or directly from the non-party police departments. *See* ECF No. 19. Moreover, Defendant offers no arguments why his IA and personnel files are any less discoverable by interrogatory than by subpoena.

Finally, Defendant has not met his burden of showing that a protective order is necessary to protect him from "annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c)(1). Defendant has not established "good cause" for the issuance of a protective order because he has not described any "clearly defined and serious injury" that would result from the discovery of his prior IA and personnel files. *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662 at 671 (quotations omitted). Defendant will not be directly burdened by responding to the interrogatories because Plaintiff served them on the Borough. *See* Riso Certif., Ex. B. Also, Defendant's general concerns about potential distraction are merely speculative. *See* Def. Br. at 9. Defendant does not specify how this relevant evidence will unfairly prejudice him by districting "anyone" viewing the files. *Id*.; *see also Burgess v. Galloway*, No. 20-6744, 2021 WL 2661290, at *5 (D.N.J. Jan. 28, 2021) (holding that a party's assertions of improper motives, which were not substantiated by specific examples, did not establish good cause

for granting a protective order).  Therefore, the Court will deny Defendant's motion for a protective order.

### C.    *Request for In Camera Review*

Lastly, in his reply brief, Defendant requests that the Court conduct an *in camera* review of his personnel and IA files to determine whether they contain relevant and discoverable information before ruling on his motion to quash and for a protective order.  Def. Rep. at 11. Defendant argues that an *in camera* review is necessary to ensure that "private, confidential and/or otherwise sensitive information remains protected in the event the Court determines that they are discoverable." *Id*.  Because Defendant first raised this issue in his reply brief, Plaintiff has not had an opportunity to respond.

The Court notes that Defendant did not properly raise the issue of an *in camera* review. "The law is clear that reply briefs should respond to arguments raised in the opposition brief, or explain a position in the initial brief that the respondent refuted.  Reply briefs are not the time to present new argument." *Smithkline Beecham PLC v. Teva Pharms. USA, Inc.*, No. 04-215, 2007 WL 1827208, at *1 (D.N.J. June 22, 2007).  This rule exists to give a non-moving party the ability to respond to "newly minted arguments." *Id*. at *2.  Here, there is no apparent reason why Defendant could not have first raised the issue of *in camera* review in his motion brief.[7] Nevertheless, it is apparent that an *in camera* review of Defendant's IA and personnel files is not warranted in this matter.

Defendant cites to no authority requiring the Court to conduct an *in camera* review of employment records before their production.  In *United States v. Zolin*, the Supreme Court held

---

[7] For the same reasons, and because any personnel or IA files produced will be covered by the Discovery Confidentiality Order, *see* ECF No. 19, the Court will decline to order redaction of certain information in the files, as Defendant first raises in his reply brief.  *See* Def. Rep. at 11-12.

that a district court may conduct an *in camera* review of documents in certain circumstances.  491 U.S. 554, 570 (1989).  "However, it held that the court should not conduct such a review solely because a party begs it to do so."  *Groark v. Timek*, 989 F. Supp. 2d 378, 400 (D.N.J. 2013) (citing *Zolin*, 491 U.S. at 571).  Also, the justification for an *in camera* review of Defendant's IA and personnel files is weak because it is likely that these records will contain information relevant to Plaintiff's *Monell* claim.  As previously discussed, whether Defendant had a history of using excessive force and whether the Borough knew or should have known about this history are key elements of Plaintiff's failure to screen claim.  *See supra* Section II(A)(1).  Defendant's personnel and IA files should directly address these issues, and so there is little value in verifying that relevant documents exist before ordering production.  Also, the Court will limit the production only to records that address Defendant's past uses of force, which will mitigate the production of irrelevant material.  In addition, screening the documents for confidential information would be an unproductive use of judicial resources.  As previously discussed, Defendant's personnel and IA files are discoverable even if they contain confidential information, so this situation does not justify an *in camera* review.

Moreover, considerations raised in cases cited by Defendant do not apply to this action.  Defendant cites to *Scouler v. Craig*, in which the court conducted an *in camera* review of a police officer's personnel file, disciplinary records, and other documents.  116 F.R.D. 494, 495 (D.N.J. 1987).  However, in that case, the parties agreed to have the disputed material examined *in camera*.  *Id*.  More importantly, the court conducted the review to assess the defendant's claim that the documents were protected by governmental privilege.  *Id*. at 496.  Here, Defendant makes no assertions that his IA or personnel files are privileged, which removes a common justification for conducting *in camera* reviews in civil rights cases.  *See, e.g.*, *Schaeffer v. Tracey*, No. 15-8836, 2017 WL 465913, at *1 (D.N.J. Feb. 2, 2017) (discussing an *in camera* review of internal affairs

documents withheld by a prosecutor's office "on various privilege grounds").

Defendant also cites to *United States v. Dent* as another example of a court conducting an *in camera* review of a police officer's personnel records. 149 F.3d 180, 191 (3d Cir. 1998). *Dent*, however, discussed a district court's review of personnel records for material which could be used to impeach the officer's credibility at trial. Here, by contrast, this case is at an earlier stage of litigation, and Defendant's prior employment records need only be relevant, regardless of whether they are admissible at trial. *See Preston*, 2009 WL 4796797, at *5. Moreover, *Dent* does not discuss whether the district court was required to conduct the *in camera* review of the personnel files. Therefore, Defendant's request for an *in camera* review of his IA and personnel files will be denied because the request was improperly raised, and notwithstanding this failure, the Court is not required to conduct a review in these circumstances, and a review would not significantly benefit Defendant while consuming judicial resources.

## CONCLUSION AND ORDER

For the reasons stated above, Defendant Ryan Dubiel's personnel and Internal Affairs files from his prior employers are relevant to Plaintiff's *Monell* failure to screen claim against the Borough of Woodlynne. While these records are confidential, they remain discoverable because Defendant's privacy interests are adequately protected by the previously entered Discovery Confidentiality Order. Also, the records are discoverable either by subpoenas to the non-party police departments or though interrogatories served on the Borough. Finally, an *in camera* review of Defendant's prior personnel and IA files before their production is not warranted. Therefore,

**IT IS** this this **2nd** day of **June 2023**;

**ORDERED** that Defendant Ryan Dubiel's motion to quash, ECF No. 25, is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that the non-party recipients of the subpoenas shall produce Defendant Ryan Dubiel's employment records, disciplinary records, Internal Affairs records, and any and all related police reports, information, and other documents; and it is further

**ORDERED** that these produced files shall be limited to documents that relate to Defendant Ryan Dubiel's uses of force or excessive force; and it is further

**ORDERED** that Defendant Ryan Dubiel's motion for the entry of a protective order is **DENIED**; and it is further

**ORDERED** that Defendant Ryan Dubiel's request for an *in camera* review of his prior employment records is **DENIED**.

s/ Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc:  Hon. Renée M. Bumb, U.S.D.J.