IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JAI WOOD, JR.<br><br>      Plaintiff,<br><br>v.<br><br>BOROUGH OF WOODLYNNE, EDWIN J. FIGUEROA, OFFICER RYAN DUBIEL, OFFICER TIRIK CLOUDEN, DETECTIVE EDGAR FELICIANO, and OFFICERS JOHN DOE #s 1–10,<br><br>      Defendants. | Civil No. 21-20738 (RMB-EAP)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

    **THIS MATTER** comes before the Court upon (i) the Motion for Summary Judgment filed by Defendant Officer Ryan Dubiel, [Docket No. 98]; and (ii) the Motion for Summary Judgment, [Docket No. 100], filed by Defendants Borough of Woodlynne, Edwin J. Figueroa, Officer Tirik Clouden, and Detective Edgar Feliciano (collectively, "**Woodlynne Defendants**" and together, with Officer Dubiel, "**Defendants**"). Plaintiff Jai Wood, Jr. ("**Plaintiff**" or "**Wood**") opposed both motions. [Docket No. 102 ("**Pl.'s MSJ Opp'n**").] The Court has considered the

1

parties' submissions[1] without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). [2]

Defendants' summary judgment motions together present only one single legal question: Whether the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Plaintiff's Fourth Amendment excessive force claim brought against Officer Dubiel pursuant to 42 U.S.C. § 1983. The Court holds that it does not. Accordingly, it **DENIES** Defendants' motions for summary judgment and intends to **SCHEDULE** this matter for **TRIAL** upon submission of the Final Pre-Trial Order.

---

[1] The parties' submissions are referred to herein as follows: (i) Officer Dubiel's Brief in Support of Summary Judgment, [Docket No. 98-8, ("**Dubiel Br**.")], his Statement of Undisputed Material Facts, [Docket No. 98-9 ("**SOMF**")], his Reply Brief in Further Support of his Motion for Summary Judgment, [Docket No. 109 ("**Dubiel Reply**")], and his Amended Responses to Plaintiff's Counterstatement of Undisputed Material Facts, [Docket No. 110 ("**Defs.' RSOMF**")]; (ii) the Woodlynne Defendants' Letter Brief in Support of Summary Judgment, [Docket No. 101 ("**Woodlynne Br**.")]; and their Letter Brief Reply in Further Support of Summary Judgment [Docket No. 105, ("**Woodlynne Reply**")]; and (iii) Plaintiff's Brief in Opposition to Summary Judgment, [Docket No. 102-29 ("**Pl.'s Opp'n. Br.**")], his Counterstatement of Undisputed Material Facts, [Docket No. 102 ("**CSOMF**")], and his Responses to Defendants' SOMF, [Docket No. 102 ("**Pl.'s RSOMF**")].

[2] The Woodlynne Defendants confusingly call their motion a "cross-motion for summary judgment" "pursuant to Federal Rule of Civil Procedure 12(c)." [Docket No. 100.] But their motion is not a cross-motion because it does not oppose Officer Dubiel's motion for summary judgment. *See Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Indeed, the Woodlynne Defendants join Officer's Dubiel's motion for summary judgment in full. [*See* Woodlynne Br. at 2–3.] Further, a motion under Federal Rule 12(c) is one for judgment on the pleadings, not summary judgment. In any case, the Woodlynne Defendants clearly intended to move for summary judgment under Federal Rule 56. [*See* Docket No. 100-2 (Woodlynne Defendants' proposed order requesting that "[s]ummary [j]udgment be … granted in full"); *see also* Woodlynne Br. at 1–3 (joining Officer Dubiel's motion for summary judgment).] The Court treats the Woodlynne Defendants' motion as such.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**[3]

Nobody disputes that Plaintiff Jai Wood, Jr., high on drugs, robbed a gas station at gunpoint. [SOMF ¶ 5; Pl.'s RSOMF ¶ 5; CSOMF ¶ 41.] The gun wasn't real. [CSOMF ¶ 92; Defs.' RSOMF ¶ 92.] It was an unloaded airsoft BB gun. [CSOMF ¶ 42.] But it sure looked like a real gun to the gas station attendant whom Plaintiff threatened, Karamjit Singh. [SOMF ¶ 4; Pl.'s RSOMF ¶ 4.] After completing the robbery, Plaintiff fled on foot, disposing of the BB gun in a graveyard on the side of the road. [CSOMF ¶ 44.] Meanwhile, Singh called the police and reported the robbery. Woodlynne police Officers Dubiel and Clouden arrived quickly on the scene. [*Id.* ¶ 45.] Singh pointed Officers Dubiel and Clouden in the direction of where Plaintiff fled and provided them with a visual description. [*Id.* ¶ 46.] Officers Dubiel and Clouden searched the surrounding areas. [*Id.* ¶ 50.] As Officer Clouden turned the patrol car onto Maple Avenue, he and Officer Dubiel spotted Plaintiff walking on the sidewalk in the opposite direction towards Ferry Avenue. [*Id.* ¶ 50; Pl.'s MSJ Opp'n, Ex. U.] Officer Dubiel got out of the patrol car, drew his weapon, and started chasing after Plaintiff who immediately began running down Ferry Avenue. [CSOMF ¶¶ 52–53.]

---

[3]   For the purposes of the instant motions, Defendants admit all facts in Plaintiff's CSOMF other than a partial denial of CSOMF ¶ 96. [Defs.' RSOMF at 2.] Accordingly, the Court primarily draws its factual background from Plaintiff's CSOMF but recites only those facts necessary to resolve the narrow motions for summary judgment before it.

Officer Dubiel believed that Plaintiff was still armed from the robbery and testified at his deposition that, during the chase, he witnessed Plaintiff glancing over his shoulder with both hands in front of his waistband as if he were carrying a tucked firearm. [*See* Pl.'s MSJ Opp'n, Ex. C, Deposition of Officer Ryan Dubiel ("**Dubiel Depo**.") at 94:5–11; 144:15–25; 150:6–12.] Plaintiff disputes this. He asserts that both of his hands were clearly visible to Officer Dubiel during the chase—specifically, that his right hand held an illuminated cell phone, and his left hand was empty, pumping up and down by his side. [CSOMF ¶¶ 60, 64–65.][4] Officer Dubiel began closing in on Plaintiff as Officer Clouden pulled the patrol car ahead of Plaintiff. Officer Clouden exited the vehicle to intercept Plaintiff but did not draw his gun. [*Id.* ¶¶ 66–67.] As Plaintiff began slowing down, Officer Dubiel fired a single gunshot hitting Plaintiff in the buttocks. [*Id.* ¶ 72.] Plaintiff immediately collapsed on the sidewalk. [*Id.* ¶ 76.] Officer Dubiel never gave Plaintiff a warning that he would shoot, although he did repeatedly tell Plaintiff to stop running. [*Id.* ¶ 55–56.] At his deposition, Officer Dubiel testified that he shot because he saw Plaintiff slow down and begin turning his body more fully towards him with his right hand raised in the air as if he were about to shoot him with the gun Officer Dubiel believed Plaintiff to be carrying. [Dubiel Depo at 162:21–173:24.] Officers Dubiel and Clouden searched Plaintiff's body and found no weapon. [*Id.* ¶ 77.]

---

[4] The disputed versions of the chase are not material for purposes of the instant summary judgment motions. They will be, however, a key part of any jury trial in this case.

Plaintiff survived the gun shot. [CSOMF ¶¶ 79–81 (describing Plaintiff's injuries).] Following his capture, arrest, and discharge from the hospital, Plaintiff pleaded guilty to one count of armed robbery in the first degree pursuant to N.J.S.A. 2C:15-1a(2). [*Id.* ¶ 91 (citing Pl.'s MSJ Opp'n. Ex. P, Plea Agreement Transcript, *State of New Jersey v Jai Wood*, Docket No. 20-03-00635-I (Oct. 14, 2021).] He did not plead guilty to any conduct involving the subsequent chase following the robbery such as resisting arrest.[5]

Plaintiff filed this § 1983 action to recover damages for the injuries he suffered because of the shooting. [Docket No. 1 ("**Compl**.") ¶¶ 32–36.] He alleged that Officer Dubiel's use of force against him was excessive and unreasonable in violation of the Fourth Amendment because (i) Officer Dubiel did not have probable cause to believe that Plaintiff was the perpetrator of the robbery; (ii) Plaintiff did not pose a significant threat of injury to the pursuing officers; and (iii) Officer Dubiel never gave Plaintiff a warning before he used deadly force. [*See* Compl. at Count I.] Plaintiff also brought claims for Fourth Amendment bystander liability against Officer Clouden and Detective Feliciano, and for municipal liability under *Monell v. Dep't of Social Services of*

---

[5]   He was additionally charged with, but did not plead guilty to, resisting arrest and purposely preventing or attempting to prevent a law enforcement officer from effecting an arrest by flight in violation of N.J.S.A. 2C:29-2a(2); a second count of first degree armed robbery in violation of N.J.S.A. 2C:15-1a(1); and possession of an imitation firearm in violation of N.J.S.A. 2C:39-4e. [SOMF ¶ 2; Pl.'s RSOMF ¶ 2.]

*the City of New York*, 436 U.S. 658 (1978) against the Borough and Public Safety Director Figueroa.[6]

Officer Dubiel and the Woodlynne Defendants each moved for summary judgment on the narrow issue of whether *Heck v. Humphrey* bars Plaintiff's § 1983 claim. The Woodlynne Defendants have not challenged the Fourth Amendment bystander liability or *Monell* claims made against them. Instead, they fully join Officer Dubiel's motion and argue only that if *Heck* bars Plaintiff's Fourth Amendment claim against Officer Dubiel, then Plaintiff cannot establish a Fourth Amendment bystander liability claim or a *Monell* claim against the Woodlynne Defendants because there would be no underlying constitutional injury. [Woodlynne Defendants Br. at 2; Woodlynne Defendants Reply at 1.] Officer Dubiel, joined by the Woodlynne Defendants, argues that *Heck* bars Plaintiff's § 1983 excessive force claim because a favorable judgment on that claim would necessarily invalidate Plaintiff's first degree armed robbery conviction in the state criminal case. [Dubiel Br. at 7; Dubiel Reply at 1.] Defendants did not raise any other argument in support of summary judgment. Plaintiff opposed both motions arguing that the elements necessary to convict him for first degree armed robbery are elementally and circumstantially distinct from Officer Dubiel's use of force such that a favorable judgment in this case would do nothing to undermine the state court conviction in violation of *Heck*. [Pl.'s Opp'n Br. at 5.]

---

[6] Although not material for the instant motions, the basis of Plaintiff's municipal liability claim is that Director Figueroa and the Borough of Woodlynne knew or should have known of Officer Dubiel's history of using excessive force. [*See* Compl. at Count III; CSOMF ¶¶ 1–35 (describing Officer Dubiel's prior uses of force).]

6

## II. LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Defendants' summary judgment motions present only one narrow legal question: whether *Heck v. Humphrey*'s favorable termination rule bars Plaintiff's § 1983 excessive force claim against Officer Dubiel. [*See* Dubiel Br. at 10; Woodlynne Br. at 2.] The evidentiary record on that purely legal question is complete and is thus appropriate to address at summary judgment. *Wicks v. Beard*, 2012 WL 1466432, at *3 (E.D. Pa. Apr. 27, 2012) ("Whether Plaintiff's § 1983 claim is cognizable is a purely legal question and the evidentiary record necessary to assess whether *Heck v. Humphrey* bars Plaintiff's claim is complete.").

## III. ANALYSIS

### A. *Heck v. Humphrey* and Excessive Force Claims

In *Heck v. Humphrey*, the Supreme Court held that a plaintiff may not recover damages under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of [a prior] conviction or sentence," unless that conviction has been reversed on direct appeal or impaired in collateral proceedings. 512 U.S. 477, 487 (1994); *see also Gilles v. Davis*, 427 F.3d 197, 208–09 (3d Cir. 2005). In other words, there must be a "favorable termination" of a prior conviction for a plaintiff to bring a subsequent § 1983 action that implicitly challenges the lawfulness of that prior conviction. The purpose of *Heck*'s favorable termination rule is to "avoid 'the

7

possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Bronowicz v. Allegheny Cnty.*, 804 F.3d 338, 345 (3d Cir. 2015) (quoting *Heck*, 512 U.S. at 484)).

To determine if *Heck* applies, the Court must carefully compare the relationship between the plaintiff's § 1983 claim against his underlying conviction. *Ortiz v. New Jersey State Police*, 747 F. App'x 73, 77 (3d Cir. 2018) (citing *Gibson v. Superintendent*, 411 F.3d 427, 447–49 (3d Cir. 2005)*, abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007)). In an excessive force case, the Court will compare the elements and factual circumstances of the prior underlying conviction with the plaintiff's excessive force claim to determine whether an excessive force judgment in the civil action would necessarily invalidate the underlying criminal conviction. *Nelson v. Jashurek* 109 F.3d 142, 145 (3d Cir. 1997); *Hendrix v. City of Trenton*, 2009 WL 5205996, at *5 (D.N.J. Dec. 29, 2009); *see also* MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION 164 (Kris Markarian, 3d ed. 2014) (determining whether a § 1983 excessive force claim necessarily implicates a conviction requires "a careful analysis of the specific facts alleged in the § 1983 excessive force complaint in relation to the specific crime for which the plaintiff was convicted.")

*Heck* usually applies in excessive force cases where the allegedly unlawful seizure is temporally or conceptually indistinct from the crime for which the plaintiff

was convicted *See Beets v. County of Los Angeles*, 669 F.3d 1038, 1042–48 (9th Cir. 2012); *Hurt v. City of Atl. City*, 2010 WL 703193, at *5 (D.N.J. Feb. 24, 2010) (Simandle, J.) (noting that "the factual basis for [a] conviction" must be "temporally and conceptually distinct from the excessive force claim" (quoting *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008)). A classic example is a case where the civil plaintiff suffers injuries fighting back against an arresting police officer effecting a seizure and is later charged with and convicted for a crime like assault or evading/resisting arrest that directly stems from the plaintiff's struggle with the police.[7]

Consider *Grande v. Keansburg Borough*, 2013 WL 2933794, at *1 (D.N.J. June 13, 2013), relied on by Officer Dubiel. [Dubiel Br. at 17–19; Dubiel Reply at 10.] In that case, the plaintiff brought an excessive force claim under § 1983 for injuries she sustained in a struggle with police officers who entered her residence to execute an arrest warrant. *Id*. The state court adjudicated her delinquent on charges of aggravated assault of a law enforcement officer and hindering apprehension. *Id*. The court found

---

[7] But because *Heck* is a fact-sensitive inquiry, an underlying charge of resisting arrest or assault of a police officer is not automatically enough for *Heck* to apply. *See Garrison v. Porch*, 376 F. App'x 274, 278 (3d Cir. 2010) (holding that the "mere fact of a conviction for assault or similar conviction arising out of the same incident does not automatically preclude recovery on an excessive force claim brought under § 1983"); *Nelson*, 109 F.3d at 145–46 (holding that conviction for resisting arrest does not necessarily preclude an arrestee for recovering damages on a § 1983 excessive force claim); *Jefferson v. Lias*, 21 F.4th 74, 86 (3d Cir. 2021) (declining to apply *Heck* where plaintiff was struck by an officer's bullet during a car cash and later pled guilty to second-degree eluding charges because force used by officer was disproportionate to the criminal conduct); *Lora-Pena v. F.B.I.*, 529 F.3d 503, 506 (3d Cir. 2008) (per curiam) (declining to apply *Heck* and holding that plaintiff's "convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force…").

9

that the plaintiff's prior conviction barred her § 1983 claim under *Heck*. The aggravated assault was not conceptually distinct from the excessive force claim because the elements of a New Jersey aggravated assault conviction necessarily meant that plaintiff used a greater amount of force than necessary on the officer in defending herself. *Id* at *5. And the aggravated assault was not temporally distinct from the excessive force claim because the plaintiff and the police officer engaged in an "uninterrupted physical struggle." *Id*. (quoting *Feeney v. Powell*, 2008 WL 2478385, at *5 (D.N.J. Jun. 17, 2008)). That is, there was no meaningful break between the plaintiff's aggravated assault on the officer and the officer's use of force on the plaintiff—it was plaintiff fighting back against the arresting officer that both caused her injuries and resulted in her aggravated assault conviction. *Grande*, 2013 WL 2933794, at *5 (noting that if the plaintiff alleged that the officer engaged in excessive force after she was already subdued, the case would "fit the scenario where *Heck* would not apply to bar an excessive force claim"); *Robinson v. Andrews*, 2014 WL 4662237, at *6–7 (D.N.J. Sept. 18, 2014) (distinguishing *Grande* and holding that plaintiff's prior aggravated assault conviction withstood *Heck* because *Heck* does not bar an excessive force claim stemming from an instance of excessive force that takes place *after* the suspect is subdued).

These kinds of cases can be difficult. SCHWARTZ, *supra* at 164 (recognizing that it is "not always clear whether, under the *Heck* doctrine, a § 1983 excessive force claim necessarily implicates a conviction for such crimes as resisting arrest, assault or battery

of an officer, or obstructing an officer" and that "[r]esolution of the issue requires a careful analysis of the specific facts alleged"). They are highly context-specific and require a close evaluation of the factual record to determine whether the excessive force claim is temporally and conceptually distinct from the underlying offense or whether the "quantum of force used may have been disproportionate to the conduct implicated by the underlying conviction—even in cases involving resisting arrest and assaulting officers." *Jefferson*, 21 F.4th at 86 (collecting cases declining to apply *Heck* where force used may have been disproportionate to the conduct implicated by the underlying conviction); *Nelson*, 109 F.3d at 145 (holding that *Heck* did not foreclose excessive force claim noting that "the fact that [the arresting officer] was justified in using 'substantial force' to arrest [plaintiff] does not mean that he was justified in using an excessive amount of force and thus does not mean that his actions in effectuating the arrest necessarily were objectively reasonable"); *Lora-Pena*, 529 F.3d at 506 (declining to apply *Heck* to bar an excessive force claim, noting that the plaintiff's "convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his own unlawful actions.").

Less difficult, however, are excessive force cases where the underlying conviction is not for a crime such as resisting arrest, assault or battery of an officer, or obstructing an officer, and is otherwise plainly unrelated to an allegedly unlawful use of force, either temporally or conceptually. Consider a case where an individual is caught in possession of drugs, but the arresting officers use more force than necessary

in executing the arrest. The individual is convicted of drug possession. *Heck* "plainly does not apply" in such a scenario because, framed conceptually, "nothing about a civil suit for damages would undermine the validity of the conviction on the possession charge." *See* G. Todd Butler & Nicholas F. Morisani, Heck*, Excessive Force, and the Fifth Circuit*, 29 MISS. C. L. REV. 529, 530 (2010). And framed temporally, "it would not be inconsistent with the state court's finding that [the plaintiff possessed the drugs] for the jury to conclude that an officer used excessive force *after* [the possession elements were met]. *Poole v. City of Shreveport*, 13 F.4th 420, 427 (5th Cir. 2021) (emphasis added).

### B. *Heck* Does Not Bar Plaintiff's Section 1983 Excessive Force Claim

This action falls into the category of excessive force cases where *Heck* plainly does not apply. Conceptually comparing the elements of Plaintiff's underlying robbery conviction with his excessive force claim and reviewing the timeline of events leading up to the shooting clearly reveals why. *See Hendrix*, 2009 WL 5205996, at *5 (to determine if *Heck* applies, the court must compare the elements of the underlying criminal charges with the plaintiff's excessive force claims and "focus on the …. chronology of the underlying incident and scrutinize[] when, in the sequence of events, force was applied").

Under N.J.S.A. 2C:15-1(a)(2),[8] a "person is guilty of robbery if, in the course of committing a theft, he … [t]hreatens another with or purposely puts him in fear of

---

[8] The parties agree that Plaintiff only pled guilty to one count of first degree armed robbery under N.J.S.A. 2C:15-1a(2). [Defs.' SOMF ¶ 3; Pl.'s RSOMF ¶ 3; Pl.'s CSOMF ¶ 91.] A guilty plea is equivalent to a conviction for purposes of *Heck*. *Gilles*, 427 F.3d at 209 n.8 ("[U]nder *Heck*, [] a guilty plea [is] sufficient to bar a subsequent §

12

immediate bodily injury." On the other half of the *Heck* equation, "[t]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999); *Graham v. Connor*, 490 U.S. 386, 395 (1989) (providing factors to consider in determining whether a seizure was reasonable).

Plaintiff's excessive force claim and his robbery conviction are not conceptually related. At trial, if the jury returns a verdict that Officer Dubiel used unreasonably excessive force to apprehend Plaintiff, that verdict would *not* mean that Plaintiff did not commit the robbery he pled guilty to. It would only mean that, in apprehending Plaintiff for committing a robbery, Officer Dubiel used an unreasonable amount of force. *See Lora–Pena*, 529 F.3d at 506 ("[Plaintiff's] convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive force (or unlawful) force in response to his own unlawful actions."). Plaintiff's excessive force claim and his robbery conviction are also not temporally related. Plaintiff completed the robbery *before* Officers Dubiel and Clouden arrived on the scene. [Defs.' SOMF ¶ 4; Pl.'s RSOMF ¶ 4.] And Plaintiff's guilty plea admissions only pertain to his conduct *before* Officer Dubiel allegedly used unlawful force in apprehending him. [Defs.' SOMF ¶ 4; Pl.'s RSOMF ¶ 4.] *Heck* does not apply in such a scenario. *Hurt*, 2010 WL 703193, at *5 (holding that *Heck* did not apply where Plaintiff's guilty plea admissions pertained to pertained to his conduct before he was

---

1983 claim."); *Jarvis v. Gliottone*, 2017 WL 5457986, at *5 (D.N.J. Nov. 14, 2017) (noting that "a guilty plea is generally treated as a conviction").

arrested); *Hogan v. City of Easton*, 2006 WL 2645158, at *16 n.20 (E.D. Pa. Sept. 12, 2006) (holding that because plaintiff's reckless endangerment charge was based on conduct one hour prior to his being shot, *Heck* did not apply). Plaintiff's excessive force claim is therefore temporally and conceptually distinct from the robbery making application of *Heck* inappropriate.

The cases cited by Officer Dubiel where *Heck* applied do not call for a contrary conclusion. [*See* Dubiel Br. at 5–19; Dubiel Reply at 4–11.] Each case falls in the above-described heartland of *Heck*'s bar on excessive force claims in which a court cannot disentangle—temporally or conceptually—a conviction for a crime like assault evasion, or resisting arrest of the arresting officers and the conduct that caused the plaintiff's injuries. *See Havens v. Johnson*, 783 F.3d 776, 777 (10th Cir. 2015) (*Heck* barred excessive force claim where plaintiff pleaded guilty to attempted assault of an officer who shot plaintiff in response to plaintiff ramming his vehicle into surrounding police vehicles before officer shot him); *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008) (*Heck* barred excessive force claim where plaintiff was convicted of discharging a firearm from a motor vehicle while attempting to evade officers' pursuit); *Jennings v. Fetterman*, 197 F. App'x 162, 164 (3d Cir. 2006) (*Heck* barred excessive force claim where jury convicted plaintiff of attempted homicide of a police officer who shot plaintiff in response to gun fire from plaintiff); *Cunningham v. Gates*, 312 F.3d 1148, 1155 (9th Cir. 2002) (*Heck* barred excessive force claim where plaintiff was convicted of felony murder of a police officer and "there was no break between [the plaintiff's]

provocative act of firing on the police and the police response that he claims was excessive"); *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000) (*Heck* barred excessive force claim where jury convicted plaintiff of aggravated assault with a deadly weapon on a police officer who shot plaintiff in response to plaintiff's approaching the officer with a knife); *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir. 1999) (*Heck* barred excessive force claim where jury convicted plaintiff of aggravated assault on a police officer who pepper sprayed plaintiff in apparent self-defense);[9] *Grande*, 2013 WL 2933794, at *5 (*Heck* barred excessive force claim where state court adjudicated plaintiff delinquent on aggravated assault and hindering apprehension charges related to altercation with arresting officers); *Feeney*, 2008 WL 2478385, at *2 (*Heck* barred excessive force claim where plaintiff pled guilty to aggravated assault and resisting arrest charges related to altercation with arresting officers).

    Here, by contrast, it is easy to disentangle the robbery from the allegedly excessive use of force both temporally and conceptually. Temporally, the robbery ended before Officers Dubiel and Clouden arrived on the scene. *Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) (en banc) (claims of excessive force based on actions that took place either before or after the time of the arrest would not necessarily imply the invalidity of the arrest). And conceptually, the elements of Plaintiff's robbery

---

[9] Notwithstanding the fact that *Hainze* and *Sappington*—two cases on which Officer Dubiel relies extensively on—are not binding on this Court and are distinguishable, scholars have noted that the Fifth Circuit's application of *Heck* in both cases reflect a more expansive approach to *Heck* that has been rejected by other courts. *See* Butler & Morisani, *supra* at 529.

conviction have nothing to do with the elements of a claim for excessive force, especially after the robbery was over. The Court fails to see any logical way Plaintiff's excessive force claim could call into question any of the elements necessary for his underlying robbery conviction. *See Hendrix*, 2009 WL 5205996, at *7 (Accordingly, "[n]ot a single element of [plaintiff's] … conviction would be undermined if [plaintiff] were to prevail in his excessive force claim against [the defendant officer].") (quoting *Ballard v. Burton*, 444 F.3d 391 (5th Cir. 2006)). Accordingly, the Court must deny Defendants' summary judgment motions.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are **DENIED**. The Court intends to **SCHEDULE** this matter for **TRIAL** upon submission of the Final Pre-Trial Order.

**May 31, 2024**                                               **s/Renée Marie Bumb**
Date                                                                      RENÉE MARIE BUMB
                                                                                  Chief United States District Judge